1 | ANDREW M. ZACKS SBN 147794
LAW OFFICES OF ANDREW M. ZACKS
2 | 235 Montgomery Street, Suite 1130
San Francisco, California 94104
3 | Telephone:  (415) 956-8100
Facsimile:     (415) 288-9755
4
5 | Attorneys for Plaintiff
Michael Hamman

6 | UNITED STATES DISTRICT COURT

7 | NORTHERN DISTRICT OF CALIFORNIA

8 | Michael Hamman,

9 | Plaintiff,                                                   No. _____

10 | vs.                                                              **CIVIL RIGHTS COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

11 | THE DEPARTMENT OF BUILDING INSPECTION, THE BUILDING INSPECTION COMMISSION, the ABATEMENT APPEALS BOARD, FRANK Y. CHIU, DIRECTOR DEPARTMENT OF BUILDING INSPECTION, WILLIAM WONG, DEPUTY DIRECTOR OF PERMIT SERVICES, JIM HUTCHINSON, DEPUTY DIRECTOR OF INSPECTIONS SERVICES, WING LAU, CHIEF BUILDING INSPECTOR, LEO MCFADDEN, SUPERVISOR CODE ENFORCEMENT SECTION, and ROSEMARY BOSQUE, DEPARTMENT OF BUILDING INSPECTION HEARING OFFICER and DOES 1-100.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Defendants.

**COMPLAINT**                                                                                       -1-

Plaintiff Michael Hamman alleges:

**JURISDICTION AND VENUE**

1. This action arises under the First, Fifth, and Fourteenth Amendments of the United States Constitution and 28 U.S.C. § 1331 and 42 U.S.C. § 1983. This action also seeks to redress the deprivation, under color of state law, of civil rights secured by the First, Fifth, and Fourteenth Amendments of the United States Constitution pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983.

2. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) in that Defendants are located in the Northern District of California, and the events or omissions giving rise to the claims occurred in the Northern District of California.

**THE PARTIES**

3. At all times mentioned in this complaint, Plaintiff Michael Hamman was and is a resident of the City and County of San Francisco (the "City"). Plaintiff is a building contractor and respected expert who specializes in residential construction in the City. Plaintiff is the owner and principal resident of the real property located at 702 Earl Street in the City (the "Property").

4. Defendants the Department of Building Inspection ("DBI"), the Building Inspection Commission ("BIC"), and the Abatement Appeals Board ("AAB") are government agencies of the City.

5 Plaintiff is informed and believes and therefore alleges that Defendant DBI is entrusted with the enforcement of the City's Administrative Code, Building Code, Housing Code, Mechanical Code, and the Plumbing Code as those codes pertain to residential and commercial construction within the

City.

6. Plaintiff is informed and believes and therefore alleges that Defendant BIC is entrusted with the oversight and management of DBI.

7. Plaintiff is informed and believes and therefore alleges that Defendant AAB is entrusted with the responsibility of reviewing orders of abatement that are issued by DBI.

8. Plaintiff is informed and believes and therefore alleges that Defendant Frank Y. Chiu ("Chiu") is the Director of DBI and a resident of the City, and is sued herein both in his official and individual capacities.

9. Plaintiff is informed and believes and therefore alleges that Defendant William Wong ("Wong") is the Deputy Director of Permit Services at DBI and is a resident of the City, and is sued herein both in his official and individual capacities.

10. Plaintiff is informed and believes and therefore alleges that Defendant Jim Hutchinson ("Hutchinson") is the Deputy Director of Inspection Services at DBI and is a resident of the City, and is sued herein both in his official and individual capacities.

11. Plaintiff is informed and believes and therefore alleges that Defendant Wing Lau ("Lau") is the Chief Building Inspector at DBI and is a resident of the City, and is sued herein both in his official and individual capacities.

12. Plaintiff is informed and believes and therefore alleges that Defendant Leo McFadden ("McFadden") is the Supervisor of the Code Enforcement Section at DBI and is a resident of the City, and is sued herein both in his official and individual capacities.

13. Plaintiff is informed and believes and therefore alleges that

Defendant Rosemary Bosque ("Bosque") is a staff member at DBI and serves as a hearing officer for DBI from time to time, and is sued herein both in her official and individual capacities.

14. Plaintiff does not know the true names and capacities of Defendants DOES 1-100. Plaintiff will amend this complaint when the true names and capacities of those Defendants are ascertained. Plaintiff is informed and believes and therefore alleges that the DOE Defendants, and each of them, are responsible in whole or in part for any and all claims and damages alleged in this complaint.

## FACTS

15. Plaintiff's Property is a three-story structure designed in the fashion of a large California barn from the late Nineteenth Century. Plaintiff purchased the Property sometime in 1997, and is the sole owner of the Property.

16. The Property was built in 1935 along the water's edge of the San Francisco Bay and was originally used as a boat building shop.

17. The Property is a massive wood framed building of over 12,000 square feet that stands in excess of 40 feet in height. Excluding the ground floor, each of the Property's floors are supported by heavy joists that are resting on massive beams supported by large posts that rise from the ground to the Property's full height.

18. The Property has always been used as a light manufacturing facility, including a boat building shop, cabinetry shop, and a tile and mosaic shop. The Property currently houses a cabinet shop, artist spaces, and Plaintiff's residential construction business.

19. Original to the building is a residential dwelling unit that was

designed and built in the distinct style of a ship's cabin, reflecting the Property's original use as a boat building shop. The residential unit was originally constructed, along with the rest of the Property, some time around 1935, and presently serves as Plaintiff's exclusive residence.

20. On or about May 9, 2000, Plaintiff submitted building permit application number 2000/05/09/9476 to DBI seeking a building permit to move and improve the Property's residential dwelling unit within the Property. As is common with old, mixed use buildings, the residential dwelling unit was not found in DBI's records, and Plaintiff's permit was not issued until he established that the unit was pre-existing.

21. Plaintiff requested that an expert from DBI with expertise in historic, mixed use buildings inspect the Property in order to verify that the residential dwelling unit was a pre-existing structure. Based upon two physical inspections of the Property, the inspector concluded that the residential dwelling unit was, in fact, pre-existing, and that it had been built some time around the Property's original construction in 1935.

22. Based upon the inspections described in paragraph 21, as well as letters and testimony from witnesses regarding the residential unit's authenticity, Plaintiff submitted building permit application number 2000/07/14/5202 to DBI on or about July 14, 2000. Thereafter, DBI issued a permit recognizing the Property's residential dwelling unit as pre-existing and legal.

23. On or about October 19, 2000, Plaintiff's building permit application number 2000/05/09/9476, first discussed in paragraph twenty, was approved, and DBI issued a building permit authorizing Plaintiff's plan to move and improve the Property's residential dwelling unit. Thereafter, Plaintiff

successfully moved and improved the Property's residential dwelling unit based upon that permit.

24. For any other person similarly situated, this story would be over. However, Plaintiff's long history of political activity in the City's building community has earned Plaintiff a powerful political enemy in a certain association of City builders (the "Association").

25. The fight between Plaintiff and the Association began when Plaintiff, as the President of the San Francisco Bay Area Chapter of the National Association of the Remodeling Industry, led the opposition to the Associations efforts to revise the City's planning code to permit more demolitions of residential homes in the City to make room for the Associations' projects.

26. Later, Plaintiff opposed a City initiative known as "Proposition G" by which the Association took *de facto* control over policy and code enforcement at the BIC, DBI, and the AAB to the benefit of its members and the detriment of its enemies.

27. Plaintiff has continued to oppose and criticize the Association and the influence it wields over the BIC, DBI, and the AAB. Because of Plaintiff's political speech and activities opposed to the Association, Defendants, and each of them, targeted Plaintiff on behalf of the Association in a campaign of oppression and intimidation designed to punish Plaintiff and silence and deprive Plaintiff of his civil rights.

## **DEFENDANTS' CONSPIRACY**

28. On or about June 10, 2002, Defendant took certain steps in a conspiracy designed to harass and intimidate Plaintiff and drive Plaintiff into abatement where they could penalize Plaintiff with fines and costs, and

ultimately deprive Plaintiff of his Property.

29. On or about June 6, 2002, an Association member phoned DBI alleging that Plaintiff had illegally constructed a "penthouse" on the Property. What the Association member was referring to was the residential dwelling unit that Plaintiff had legally moved and improved pursuant to two building permits previously issued by DBI.

30. In response to this single phone call, Defendants deployed a team of building inspectors, accompanied by an Association member, to inspect the Property. Reluctantly, and under protest, Plaintiff granted Defendants permission to enter and inspect the Property. The Association member remained in the car and did not reveal his identity during the inspection.

31. Under Defendant's orders, the inspectors proceeded to comb through the Property and examine all of Plaintiff's construction drawings, building permits, and improvements. After more than two hours of searching the Property, Defendants left without producing any findings or providing Plaintiff with any notice of violations, which is the customary procedure. Instead, Defendants informed Plaintiff that it would be necessary for them to see what the Association wanted.

32. Thereafter, on or about June 21, 2002, Defendants issued the first notice of violation, number 200230059, containing nine cited violations.

33. On or about June 21, 2002, Plaintiff submitted a building permit application to DBI to cure the items cited in the notice of violation. Plaintiff's building permit application was approved over the counter, and a building permit number 96718 was issued on June 21, 2002.

34. On June 26, 2002, Defendants Chiu and Lau informed Plaintiff that DBI was suspending building permit 96718, alleging that Plaintiff had incorrectly classified the Property's residential dwelling unit as pre-existing and

legal on the permit application. Defendants also alleged that Plaintiff had failed to disclose the construction of a deck on the application which resulted in DBI not sending out public notices concerning the construction of the deck.

35. On or about July 9, 2002, Plaintiff appealed the suspension of permit 96718 to the City's newly formed Board of Appeals (formerly the Board of Permit Appeals). In his appeal, Plaintiff requested that the Board find that the Property's residential dwelling unit was pre-existing and legal and that public notices concerning the deck were not required.

36. The Board of Appeals is vested with exclusive jurisdiction to review the suspension of building permits, and to decide, *de novo*, all issues connected thereto. Accordingly, it was within the Board's exclusive jurisdiction to decide the legality of the Property's residential dwelling unit in connection with the suspension of permit 96718.

37. Unfortunately, a hearing date before the Board of Appeals was not scheduled for approximately six months because the newly formed Board was not sitting at that time. Nevertheless, Defendants' refused to await the Board's ruling and pressed on with their campaign of oppression.

38. On or about July 22, 2002, Defendants issued a second notice of violation numbered 200230059 containing nine cited violations concerning the Property.

39. From about July 9, 2002 to August 26, 2002, Plaintiff attempted to file building permit applications to cure all violations concerning the Property to date. However, on each occasion, Defendants summarily refused to even accept Plaintiff's applications because Plaintiff continued to maintain that the Property's residential dwelling unit was pre-existing and legal. As Defendant Jim Hutchinson explained "[t]here is no legal residential use at this property and, as such, we will not allow you to fill out a building permit application...."

40. Plaintiff reminded Defendants that the legality of the Property's residential unit was an issue properly before the Board of Appeals. Nevertheless, Defendants refused to defer to the Board of Appeals.

41. On or about September 10, 2002, Defendants issued a third notice of violation numbered 200230059, containing nine cited violations concerning the Property.

42. As before, Plaintiff made multiple attempts to file building permit applications to cure all violations concerning the Property to date. However, as before, Defendants rejected Plaintiff's applications because Plaintiff continued to maintain that the residential unit was pre-existing and legal.

43. Some time between September 10, 2002 and October 10, 2002, Plaintiff invited Defendant McFadden to the Property to re-inspect the Property believing that McFadden would clear-up the violations that were cited in error.

44. Instead of clearing-up the violations, however, Defendant McFadden issued a report of violations dated October 10, 2003, containing a total of twenty-one cited violations concerning the Property (the "Report of Violations"). The Report of Violations contains all violations concerning the Property to date.

45. The Report of Violations contains the following fabrications which Defendant McFadden refuses to retract: that Plaintiff had newly constructed the residential dwelling unit without permits; that Plaintiff had converted the Property from a one-story to a three-story building; that Plaintiff was illegally operating a steal fabrication factory on the Property; and that Plaintiff was illegally operating an art gallery on the Property.

46. Plaintiff continued filing building permit applications to cure all violations contained within the Report of Violations. However, as before, Plaintiff's applications were rebuffed without any consideration because

Plaintiff continued to maintain that the Property's residential dwelling unit was pre-existing and legal.  And, as before, Defendants refused to defer to the Board of Appeals.

47.   On or about November 5, 2002, after Plaintiff's attorneys got involved in the process, Defendants reluctantly agreed to accept Plaintiff's building permit application number 2002/11/05/0837 to cure all violations contained in the Report of Violations.  However, Defendants simply sat on Plaintiff's application without either issuing or denying building permits.  As Inspector Sean McNulty of DBI explained:

> "And the fact from my perspective, there was a change of use or occupancy, the routing of this application needed to go to the Department of City Planning.  We did route it there, after Mr. Hamman filed for a permit, and it's still there [as of January 15, 2003].  It hasn't been approved or anything."

Had Defendants simply denied Plaintiff's building permit application, that application would have been appealed to the Board of Appeals.  However, Defendants had Plaintiff right where they wanted him, in a trap, and Defendants had no intention of surrendering their advantage to the jurisdiction of the Board of Appeals.

48.   On November 14, 2002, Defendants finally sprung their trap. Defendants compelled Plaintiff to appear at a Director's Hearing at DBI to answer for the violations contained in the Report of Violations while simultaneously refusing to issue the very building permits required to cure those violations.

49.   At the Directors Hearing, Defendants continued to press the party line and refused to even consider Plaintiff's building permit application because Plaintiff continued to maintain that the Property's residential dwelling unit was pre-existing and legal.  As Defendant Rosemary Bosque explained:

> "What I've got before me is Building Permit Application No. 200211050837, and this permit is saying that this is not a change in

**COMPLAINT** -10-

occupancy but only a correction...I have to tell you, my first reaction on this is this does not address the litany of items that I just heard from [McFadden]. [McFadden is saying that this is an illegal occupancy."

50. Contrary to Defendant Bosque's assertion, however, Plaintiff's building permit application no 2002/11/05/0837 did address every violation cited in the Report of Violations. Nevertheless, Defendant Bosque simply refused to review or even consider the multiple pages attached to Plaintiff's application. Instead, Defendant Bosque summarily issued an order of abatement on the Property, imposing restriction's on the Property's title and imposing costs, fines, and interest on Plaintiff as a result. Defendants also informed Plaintiff's bank of the order of abatement in an attempt to provoke foreclosure on the Property.

51. On or about December 6, 2002, following the Director's Hearing, Plaintiff appealed the order of abatement to the AAB requesting that the AAB order DBI to accept and process Plaintiff's building permit application and issue permits to cure the violations cited in the Report of Violations. As a result, a hearing before the AAB was set for January 15, 2003.

52. In the meantime, after nearly six months of waiting, Plaintiff's hearing date before the newly formed Board of Appeals concerning the legality of the Property's residential unit was set for January 22, 2003.

53. Thereafter, Plaintiff requested that the AAB defer to the Board of Appeals and continue its January 15th hearing. However, the AAB refused to continue the hearing. Instead, the AAB, in Kafka fashion, issued an order commanding Plaintiff to file a building permit application to comply with the Report of Violations - even though DBI was already sitting on Plaintiff's building permit application, number 2002/11/05/0837, which Plaintiff had previously filed to comply with the Report of Violations.

54. Thereafter, on January 22, 2003, the Board of Appeals met and

**COMPLAINT** -11-

heard Plaintiff's appeal.  After lengthy testimony by both Plaintiff and Defendants, the Board of Appeals issued the following findings:

> Based upon the Zoning Administrator letter of determination appeal results, the basis upon which the permit [96718] was suspended was erroneous, ie, that the residential use was a legal use either on a grandfathered theory or an accessory use theory, that Michael Hamman was prevented from obtaining building permits to correct the subsequent NOVs by the same erroneous conclusion that the residential use was not permitted, and that the NOVs for failure to issue a section 311 notice for the horizontal extensions (deck) was erroneous and was so acknowledged by DBI at the hearing because a Section 311 notice is not required in an M district.

55.    In other words, the Board of Appeals specifically found that DBI had erroneously suspended Plaintiff's building permit application number 96718, and that DBI had prevented Plaintiff from obtaining building permits to cure the violations contained within the Report of Violations.

56.    For any other person similarly situated, this story would be over. However, Defendants, on behalf of the Association, simply decided to disregard the Board of Appeals and press on with their campaign of persecution designed to force plaintiff from the Property.

57.    To date, Defendants still refuse to recognize the legality of the Property's residential dwelling unit irrespective of the Board of Appeals findings.  Defendants also continue to refuse to issue any building permits to Plaintiff to cure the Report of Violations.  And, Defendants will not state in writing why they refusing to issue Plaintiff any building permits to cure the Report of Violations.  As a result, Plaintiff is still stuck in Defendant's abatement trap.

58.    And, a more ominous sign of things to come, on October 31, 2003, Defendant McFadden lead the City's police and fire departments on an unauthorized raid on the Property.  Plaintiff was having a private Halloween party that night and McFadden falsely and maliciously told the local fire and police battalions that Plaintiff was having an unauthorized gathering in a

commercial space (*i.e.* Plaintiff had no legal residential use on the Property).

59. Plaintiff informed the fire and police officers on the scene that he, in fact, had a legal residential unit and was conducting a private party. Thereafter, Plaintiff invited the police and fire officers into the Property where they conducted a complete inspection to their satisfaction. The fire and police battalions then left without incident and without filing any report of violations concerning the Property or Plaintiff's party.

60. Plaintiff is informed and believes and therefore alleges that Defendants conduct alleged above is in direct violation of Plaintiff's rights of free speech, equal protection, and due process.

61. As a proximate result of Defendants' conduct, and the facts alleged herein, Plaintiff has been damaged in an amount to be proven at trial, but which is estimated to exceed $5,000,000.

## FIRST COUNT

**Violation of Civil Rights, 42 U.S.C. § 1983, In Retaliation For Exercise of Free Speech and Association - Against All Defendants)**

62. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 61 as though fully set forth herein.

63. Plaintiff is entitled to free speech and association under the First Amendment, as applied pursuant to the Fourteenth Amendment of the United States Constitution.

64. As alleged herein, Defendants, and each of them, have deprived Plaintiff of his civil rights by their conduct, by penalizing Plaintiff unfairly in retaliation for Plaintiff's political speech and activity and by treating Plaintiff differently from similarly situated persons. Plaintiff is informed and believes and therefore alleges that Defendants' behavior was pursuant to official City

policy and/or custom under which Defendants directed the BIC, DBI, and the AAB to implement City codes and enforcement procedures in a retaliatory and disparate fashion as against Plaintiff, based on Plaintiff's protected activities, and under which Defendants ratified said disparate treatment of Plaintiff.

65. Defendants have acted and continue to act under color of state law in depriving Plaintiff of his civil rights in violation of 42 U.S.C. § 1983.

66. As a proximate result of Defendants' conduct, and the facts alleged herein, Plaintiff has been damaged in an amount to be proven at trial, but which is estimated to exceed $5,000,000.

67. In doing the acts herein alleged, Defendants acted willfully, maliciously, and oppressively, in bad faith, with improper motives, and with callous, intentional and/or reckless disregard of Plaintiff's federally protected rights, and subjected Plaintiff to unjust hardship, knowing that their conduct was substantively likely to injure Plaintiff. As a result of this conduct, Plaintiff is entitled to putative damages.

68. Unless Defendants are permanently enjoined and restrained, Plaintiff will continue to suffer irreparable harm in that Plaintiff will be unable to enjoy the use and value of his Property free from oppression, harassment, and intimidation.

## SECOND COUNT

**(Violation of Civil Rights, 42 U.S.C. § 1983, of Equal Protection - Against All Defendants)**

69. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 68 as though full set forth herein.

70. Plaintiff is entitled to equal protection of the laws, a right protected by the Fourteenth Amendment of the United States Constitution.

71. As alleged herein, Defendants, and each of them, have deprived Plaintiff of his civil rights by their conduct by penalizing Plaintiff and unfairly imposing conditions on the issuance of building permits that were not imposed on similarly situated persons. Plaintiff is informed and believes and therefore alleges that Defendants' behavior was pursuant to official City policy and/or custom under which Defendants directed the BIC, DBI, and the AAB to implement City codes and enforcement procedures in a retaliatory and disparate fashion as against Plaintiff, based on Plaintiff's protected activities, and under which Defendants ratified said disparate treatment of Plaintiff.

72. Defendants have acted and continue to act under color of state law in depriving Plaintiff of his civil rights in violation of 42 U.S.C. § 1983.

73. As a proximate result of Defendants' conduct, and the facts alleged herein, Plaintiff has been damaged in an amount to be proven at trial, but which is estimated to exceed $5,000,000.

74. In doing the acts herein alleged, Defendants acted willfully, maliciously, and oppressively, in bad faith, with improper motives, and with callous, intentional and/or reckless disregard of Plaintiff's federally protected rights, and subjected Plaintiff to unjust hardship, knowing that their conduct was substantively likely to injure Plaintiff. As a result of this conduct, Plaintiff is entitled to putative damages.

75. Unless Defendants are permanently enjoined and restrained, Plaintiff will continue to suffer irreparable harm in that Plaintiff will be unable to enjoy the use and value of his Property free from oppression, harassment, and intimidation.

### THIRD COUNT

**(Violation of Civil Rights, 42 U.S.C. § 1983, Violation of Procedural Due Process - Against All Defendants)**

76. Plaintiff realleges and incorporates herein by reference each and every allegation in paragraphs 1 through 75 as though fully set forth herein.

77. Plaintiff is entitled to Procedural Due Process protection under the Fourteenth Amendment of the United States Constitution

78. As alleged herein, Defendants have deprived Plaintiff of his civil rights by their conduct alleged above by imposing conditions on the issuance of building permits to Plaintiff that were not imposed on similarly situated persons. Specifically Defendants delegated and or abdicated its power to regulate land use decisions to the Association, a private organization, without appropriate standards. Defendants additionally deprived Plaintiffs of their right to have land use determinations made by an impartial and fair decision maker.

79. Plaintiff is informed and believes that the above cited improper conduct was pursuant to City policy and/or custom under which Defendants directed the BIC, DBI, and the AAB to implement City codes and enforcement procedures in a retaliatory and disparate fashion as against Plaintiff, based on Plaintiff's protected activities, and under which Defendants ratified said disparate treatment of Plaintiff. Moreover Defendants effectively required Plaintiff to submit his building permit applications to cure the Report of Violations to a non-governmental entity, resulting in the imposition of unwarranted and arbitrary restrictions on the issuance of permits, arbitrary and capricious determinations, and unwarranted delay and expense.

80. Defendants have acted and continue to act under color of state law in depriving Plaintiff of his civil rights, in violation of 42 U.S.C. § 1983.

81. As a proximate result of Defendants' conduct, Plaintiff has been damaged in an amount to be proven at trial, but which amount is estimated to exceed $5,000,000.

82. In doing the acts herein alleged, Defendants acted willfully, maliciously, oppressively, in bad faith, with improper motives, and with callous, intentional and or/reckless disregard of Plaintiff's federally protected rights, and subjected Plaintiff to unjust hardship, knowing that their conduct was substantially likely to injure Plaintiff. As a result of this conduct, Plaintiff is entitled to punitive damages.

83. Unless Defendants are permanently enjoined and restrained, Plaintiff will continue to suffer irreparable harm in that Plaintiff will be unable to enjoy the use and value of his Property free from oppression, harassment, and intimidation.

### **PRAYER ON ALL CAUSES OF ACTION**

WHEREFORE, Plaintiff prays for judgment as follows:

1. For compensatory damages in an amount to be proven at trial;
2. For punitive damages in an amount to be proven at trial;
3. For an order enjoining and restraining Defendants, and each of them, from targeting Plaintiff with selective enforcement and conditioning the issuance of building permits on the discretion of non-governmental entities and capricious, arbitrary, and oppressive standards not applied to other persons similarly situated to Plaintiff;
4. For attorneys' fees pursuant to 42 U.S.C. § 1983;
5. For interest at the legal rate; and
6. For other and further relief this Court deems fitting and appropriate.

////

////

**COMPLAINT**  -17-

Dated: November 13, 2003

                LAW OFFICES OF ANDREW M. ZACKS

_____
Andrew M. Zacks

Attorneys for Plaintiff Michael Hamman

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury.

Dated: November 13, 2003

                LAW OFFICES OF ANDREW M. ZACKS

_____
Andrew M. Zacks

Attorneys for Plaintiff Michael Hamman

**COMPLAINT** -18-